Sidney Squibb, J.
As this case was being reached for trial, the defendant moved for an order granting summary judgment in its favor because “ the Doctrine of Collateral Estoppel applies”. In opposition, the claimant maintains that this legal principle cannot be used effectively as a sword against her right to a trial of the issues herein.
The movant’s posture is predicated on a judgment of the Supreme Court of the State of New York, County of New York, in the consolidated action wherein this claimant and another were plaintiffs and Gull Contracting Co., Inc., Tully & DiNapoli, Inc. and the City of New York were defendants. (Referred to as “Gull”, “Tully” and “the City”.) Said case and the claim in our court are based on an occurrence which resulted in the death of claimant’s intestate, the driver of an automobile owned by his father, the coplaintiff in the Supreme Court. It was “ about 3:00 a.m.” when the Brennan automobile proceeding easterly on Long Island Expressway in Queens County, New York City, “ was caused to strike the wooden barrier of the detour at the eastbound Parsons Boulevard exit ” (verified claim herein).
As noted, in addition to the claim instituted by the administratrix in this court, there were two eases begun in the Supreme Court. In one, the lady and her father-in-law sued the two alleged contractors, Gull and Tully. In the other, the administratrix was the only plaintiff and the City was the single defendant. These two cases were consolidated into one newly encaptioned case of the two plaintiffs against the three defendants.
The consolidated case was tried twice. The first trial consumed 10 days. The first Trial Judge dismissed the complaint as to Gull. The issues between the plaintiffs and the remaining defendants, the City and Tully, were submitted to the jury, which disagreed.
The second trial took seven days. The second Trial Judge dismissed the complaint as to the City. The issues between the plaintiffs and the sole remaining defendant, Tully, were submitted to the jury which rendered a verdict in favor of the defendant. The judgment thereon remains undisturbed.
The movant relies heavily on Schwartz v. Public Administrator (24 N Y 2d 65 [Feb., 1969]) and Albero v. State of New York (26 N Y 2d 630 [Jan., 1970], affg. without opn. 31 A D 2d 694, which had revd. 56 Misc 2d 235). In none of these cases *215 was the factual situation similar to the one at bar.
When this motion was argued initially before me, there was conclusory reference made to the second Trial Judge’s charge to the jury. The exact verbiage thereof was not being presented to me. I made oral reference to a somewhat recent reprint in the New York Law Journal (March 2-5, 1970) of the article entitled “ Collateral Estoppel in New York” (44 St. John’s L. Rev., ’65) by Professor Maurice Rosenberg of Columbia University School of Law. The defendant’s counsel then requested an adjournment of the motion to obtain the stenographic minutes of the second trial. Eventually these minutes (857 pages) were submitted to me. There followed a resumption of the oral argument and submission of memoranda. Decision was reserved.
A few days ago on the first page of the New Tork Lom Journal of September 29, 1970, there appeared the second part of an article entitled “ Recent Developments in New York Civil Practice ”. This was a report of the CPLR panel at the Ninth Annual Conference of New York State Trial Judges. Professor Faust F. Rossi of Cornell Law School reviewed (p. 4, col. 1) “ the most recent development in the area of collateral estoppel ”. The report continues: “ Res judicata is defined in textbook fashion as a doctrine which gives binding effect to a judgment and prevents the'parties to it and those in privity with them from subsequently relitigating any questions necessarily decided. Its twin goals are judicial economy and prevention of inconsistent results.
“ The hard and oft-litigated question involves a variation of the general rule. Clearly the parties and their privies are bound by a prior determination of any cause sought to [be] relitigated; but what of persons neither parties nor in privity with a party to the first action! May a stranger to the first suit derive any advantage from the prior judgment in which he was not involved!
“Until recently, a negative answer was customarily given and was expressed in terms of the necessity for mutuality. Since the prior judgment, whatever its result, could not be used against a stranger to the first action, neither could it be used for Ms benefit. This principle has been eroded in the last decade to the point of nonexistence and just three years ago the New York Court of Appeals declared in DeWitt v. Hall (19 N. Y. 2d 141, 147, 225 N. E. 2d 195, 198, 1967), that ‘the doctrine of mutuality is a dead letter.’ In its place we have the modem test expressed in Schwartz v. Public Administrator (24 N. Y. 2d 65, 69, 246 N. E. 2d 725, 727-728, 1969). It need only be *216 shown that the party against whom estoppel is sought to be applied has had ‘ a full opportunity ’ to litigate a particular issue.”
At bar, it cannot be declared that the claimant ‘1 had ‘ a full opportunity ’ to litigate a particular issue.” In considering issues, there must be recognition of the differing responsibilities of (a) the State and (b) one of its contractors performing a construction contract. Issues are framed by the pleadings, which should be examined and compared on a motion invoking collateral estoppel (B. R. DeWitt, Inc. v. Hall, 19 N Y 2d 141 [1967]).
Claimant’s pleading (the verified claim) herein alleges: “ that this defendant failed, omitted and neglected to furnish the deceased with a reasonably safe roadway, exit and detour under existing conditions and circumstances; in that the defendant failed, omitted and neglected to provide and maintain proper, suitable and sufficient lights, signals, warnings, markings, notices or other adequate means of calling attention to the dangerous conditions existing on the highway at the exit and detour, and in that the use of the said highway under existing conditions and circumstances rendered such use dangerous with the presence of gravel and sand in the roadway and in causing the construction and maintenance of a too sharp turn of the detour exit at the Eastbound Parsons Boulevard exit of said Long Island Expressway, without adequate provision for proper warnings, signs and lights at the abrupt end of the roadway and of the too sharp turn of the detour exit, thereby making travel on said highway at said location under existing conditions and circumstances dangerous and hazardous; and further, in that the lighting on the Long Island Expressway beyond the detour created an illusion that the highway continued straight beyond the detour thereby creating a trap for persons lawfully using send highway ”. (Emphasis supplied.)
A comparison of this paragraph 10 with paragraph ‘ ‘ Sixteenth ” of the Supreme Court complaint against the two alleged contractors demonstrates that none of the underlined matter was pleaded in that Supreme Court action.
Indeed, on the second Supreme Court trial, the jury was specifically charged:1 ‘ that the sole responsibility for the design form, dimensions, location, lighting and arrangement of this curved ramp and its appurtenant barricade was entirely the responsibility of the State of New York and is in no sense to be considered as the responsibility of the defendant, Tully & DiNapoli” and: “ that the sole responsibility for the number, *217 size, shape, color, lettering and location of these signs was solely the responsibility of the State of New York and in no sense can it be conceded is the responsibility of the defendant, Tully & DiNapoli.”
At the conclusion of the charge, the plaintiffs requested the Trial Judge to charge “ that the lighting on the Long Island Expressway beyond the detour created an illusion that the highway continued straight beyond the detour, thereby creating a trap.” The Judge declared, “I decline to charge the jury other than to say that any such condition would be wholly the responsibility of the State of New York and in no sense the responsibility of the defendant, Tully & DiNapoli.”
As heretofore stated, the State can be sued for its tortious misfeasance or nonfeasance apart from the acts or inaction of its contractor. In Bronxville Palmer v. State of New York (33 A D 2d 412, 415 [3d Dept., March, 1970]) Herlihy, P. J., writing for the majority, declared: “As to Bronxville Palmer, the record establishes, and we so find, that the State was negligent in failing to provide adequate safeguards in the planning and accomplishment of the reconstruction (cf. Morris v. State of New York, 10 A D 2d 754, 755) ”.
Our movant’s emphasis on Albero v. State of New York (26 N Y 2d 630, affg. 31 A D 2d 694, supra) is misplaced. The factual situation was vastly different. So is the legal result. There, Albero was driving an automobile south on the Thruway. He skidded, crossed the median mall and struck a northbound vehicle operated by Siccardi. Siccardi and occupants of his vehicle sued Albero in the United States District Court for the Southern District of New York, alleging that Albero’s negligence caused their personal injuries. The jury found in favor of those plaintiffs against Albero. There was no appeal from the judgment entered thereon. Thereupon, in this court where Albero was suing the State and the Thruway Authority, the defendants moved to dismiss the claim. That motion was granted by the Appellate Division because in the. Siccardi case the jury had found that Albero’s negligence caused the accident and as Gabrielli, J., declared for the majority at the top of page 695 of 31 A D 2d in Albero v. State of New York: “no valid reason has been shown why the respondent [Albero] should be permitted to retry this issue.”
At bar, there is no finding, verdict or judgment in the Supreme Court case that the Brennan decedent was negligent. No special verdict on this issue of the intestate’s negligence was requested or obtained. The jury may never have even considered or *218 decided that ultimate issue. No one knows. It would have been sufficient for the members of the jury to decide that the Brennan plaintiffs had not proven the contractor’s negligence. The jury’s conclusion of that single issue, would be sufficient for its verdict for the defendant. There has been no licit adjudication that the claimant’s intestate was negligent.
It has been contended that the presence of the sovereign State as an alleged tort-feasor creates a “.special situation” requiring an uncommon ruling. That is not so. It would have been desirable, if possible, that all alleged tort-feasors be joined as defendants in a single case in one court having jurisdiction over all the parties. That would preclude a multiplicity of suits, expedite the finality of litigation and facilitate the economies of all concerned. However, the other side of the coin causes one to reflect on what the situation might have been if we had no Court of Claims Act. The State of New York would be immune from suit and liability. The State could not have been brought before the bar of justice.
A statutory right to sue a sovereign State directly exists in few of our 50 States. Judicial decisions in other States have relaxed the .sovereign immunities to some extents. No State has a more liberal or enlightened procedure than in New York. (Tort Liability of the States by Robert A. Leflar and Benjamin E. Kantrowitz, 29 N. Y. Univ. L. Rev. 1363, 1391 [Nov., 1954]; The Court of Claims: Its Development and Present Role in the Unified Court System by John J. McNamara, Jr., 40 St. John’s L. Rev. 1 [Dec., 1965]; Sovereign Immunity and Public Responsibility; (Governmental Tort Liability: A Decade of Change by Professor Arvo Van Alystne of University of Utah Law School, 1966 Univ. of Ill. Law Forum 9191 [Winter, 1966].)
It is recognized that in our State the waiver of sovereign immunity does not include the right to a jury trial. (The Legislature has been aware that where the State is involved, exigencies compel lawsuits to be instituted and decided in more than one forum. Constitutional changes have been considered.) Only in this court, without a jury, can the State of New York be sued for an alleged tortious act. In our court another outside alleged tort-feasor cannot be joined with the State. Conversely, in the State Supreme Court the .sovereign State of New York cannot be .a party defendant in a negligence case, singly or joined with other alleged tort-feasors. In and of itself this “ unique ” situation of a sovereign’s involvement does not vitiate the application of the legal principles of collateral estoppel or res judicata. At bar, concededly there is no res judicata.
*219 As a matter of law, the doctrine of collateral estoppel cannot be applied against the claimant herein. The defendant’s motion for summary judgment in its favor against the claimant, is denied.